**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TAMMY M. KLEIN,**

      **Petitioner,**

      **v.**

**WARDEN, OHIO REFORMATORY
FOR WOMEN,**

      **Respondent.**

**Case No. 2:15-cv-782
Judge Watson
Magistrate Judge King**

**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition,* ECF No. 3, Respondent's *Motion to Dismiss*, ECF No. 6, Petitioner's *Response to the Motion to Dismiss*, ECF No. 9, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss,* ECF No. 6, be **GRANTED** and that this action be **DISMISSED**.

**Facts and Procedural History**

> On March 17, 2010, Dave's Pharmacy, located at 411 West Fifth Street in Marysville, was robbed by an armed assailant. The assailant, later identified as Amanda Freed, stole numerous pills containing oxycodone. Freed was later arrested for an unrelated offense. While in custody for the unrelated offense, Freed voluntarily confessed that she robbed Dave's Pharmacy, and that Klein, her aunt, was involved in the robbery.
>
> In October 2011, the Union County Grand Jury returned a five count indictment against Klein, charging her as follows: Count One, complicity to commit aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree, with a firearm specification under R.C. 2941.145(A) and a forfeiture specification under R.C. 2941.1417(A); Count Two, complicity to commit theft of a dangerous drug in violation of R.C. 2913.02(A)(4), (B)(6), a

1

felony of the fourth degree, with a firearm specification under R.C. 2941.145(A) and a forfeiture specification under R.C. 2941.1417(A); Count Three, complicity to commit kidnapping in violation of R.C. 2905.01(A)(2), a felony of the first degree, with a firearm specification under R.C. 2941.145(A); Count Four, drug possession in violation of R.C. 2925.11(A), a felony of the second degree, with a forfeiture specification under R.C. 2941.1417(A); and Count Five, tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree, with a forfeiture specification under R.C. 2941 .1417(A).

A jury trial was held in this matter on January 11 and 12, 2012. The following relevant evidence was adduced during the State's case-in-chief.

According to Freed, she and Klein were together at Klein's residence on the morning of March 17, 2010. During that time, she and Klein discussed a mutual debt they owed to her then-boyfriend, Roscoe, for cocaine that he had advanced to them. Freed testified that Klein suggested that they rob Dave's Pharmacy and use the proceeds to settle their debt with Roscoe.

Freed explained that in preparation for the robbery, Klein showed her an aerial view of Dave's Pharmacy and described what the pharmacy looked like inside. Klein also provided her with clothing and a gun to use during the robbery. However, Freed recalled that she and Klein agreed to "show [the gun] to scare somebody, but never to use it." Trial Tr., Vol. I, p. 97. Freed also testified that she did not have access to a phone on the day of the robbery.

On direct examination, Freed testified that she and Klein were the only individuals involved in the robbery, and that she and Klein left Klein's residence to commit the robbery at approximately 5:00 p.m. During cross-examination, however, Freed testified that Roscoe was also involved in the robbery.

Freed testified that before she and Klein left Klein's residence to commit the robbery, she and Klein both did heroin. When asked whether the heroin impairs her memory, Freed responded that "[s]ome things but not something this big. Not—maybe some little details, but I remember most of what happened that day." Trial Tr., Vol. I, p. 112. Freed indicated that Klein drove a maroon Dodge pickup truck during the robbery. Freed recalled that she and Klein drove to a residential area located behind the pharmacy. With the assistance of an aerial photograph of the area surrounding Dave's Pharmacy, Freed indicated that Klein parked the truck in front of a

2

residence located at 426 West Sixth Street. On direct examination, Freed explained that Klein stayed in the truck, which remained running, while she proceeded from the truck through an alley and across several yards to Dave's Pharmacy. On cross-examination, however, Freed testified that Roscoe was also in the truck and stayed there during the robbery.

Karen Smith, who resides at 426 West Sixth Street in Marysville, testified that on March 17, 2010, she arrived home sometime between 5:00 p.m. and 6:00 p.m. Smith explained that upon her arrival she noticed a maroon pickup truck parked along the street in front of her residence. Smith testified that she had never seen that truck parked in front of her residence before and thought the circumstances were unusual. Smith recalled that the truck was running and that there was one individual sitting in the truck's driver seat. Smith further recalled that the individual had a small build and that the individual's hair was tied up in a barrette. Given her observations, Smith testified that she believed the individual in the truck was a female. Though Smith conceded that she did not continually observe the truck, she indicated that the truck was parked in front of her residence for approximately 10 minutes, and that she never witnessed anyone climb out of or into the truck.

Turning back to the robbery, Freed testified that upon entering the pharmacy she feigned interest in some foot cream. Freed explained that she requested assistance from one of the pharmacy's employees, Crystal Reisinger. During her interaction with Reisinger, Freed pulled up her shirt to reveal a gun tucked in her waistband. Upon displaying the gun, Freed demanded that Reisinger give her all of the pharmacy's OxyContin. Reisinger complied with her request and gave her four bottles containing OxyContin. Immediately thereafter, Freed fled back to the truck, following the same route she took to the pharmacy.

Freed testified that as soon as she left the pharmacy she heard sirens. Freed climbed into Klein's truck through the back door and got down on the floor as Klein drove her to Johnstown, Ohio. Freed explained that during the ride Klein instructed her to dump the pills into a plastic bag. Also during the ride, they stopped at a gas station where she discarded the clothes used during the robbery, the gun, and the empty pill bottles into a dumpster. Freed testified that she and Klein gave most of the OxyContin to Roscoe, and divided the remainder between themselves.

Reisinger's recollection of the robbery was very similar to Freed's description of what occurred. According to Reisinger, the robbery

occurred at approximately 5:30 p.m. Reisinger recalled that Freed was initially interested in purchasing foot cream. However, during their conversation, Freed pulled her shirt up to reveal a gun tucked in her waistband. Reisinger testified that she was scared and asked Freed what she wanted. Freed responded that she wanted OxyContin. Accordingly, Reisinger gathered four bottles containing OxyContin and gave them to Freed.

Several hours after the robbery, David Burke, a pharmacist and the owner of Dave's Pharmacy, arrived at the pharmacy. Burke testified that by law he is required to maintain records of all controlled substances in his pharmacy's possession. Burke explained that his pharmacy continually updates the record of all controlled substances, including oxycodone, which he identified as a schedule two controlled substance. Burke testified that shortly after arriving at the pharmacy, he took an inventory of the stolen items. Burke indicated that 130 pills of 10 milligram OxyContin were stolen, and that the bulk amount of 10 milligram OxyContin equates to 45 pills.FN1 Next, Burke indicated that 25 pills of 20 milligram OxyContin were stolen, and that the bulk amount of 20 milligram OxyContin equates to 23 pills. Finally, Burke indicated that 30 pills of 40 milligram OxyContin were stolen, and that the bulk amount of 40 milligram OxyContin equates to 12 pills.

> FN1. This court has observed that "OxyContin is the trade name for Oxycodone Hydrochloride controlled-release pills, an opioid analgesic drug." *State v. Ward*, 3d Dist. No. 13–11–17, 2012–Ohio–988, fn. 2.

During the Defendant's case-in-chief, the following relevant evidence was adduced.

Throughout her testimony, Klein denied any involvement in the robbery of Dave's Pharmacy. Klein testified that she routinely filled her prescriptions at Dave's Pharmacy, and that Freed was aware of this fact. According to Klein, she was being prescribed OxyContin at the time of the robbery. Klein also admitted that she had done heroin with Freed several times, but denied doing heroin with Freed on March 17, 2010.

Klein, her husband, Timothy Klein ("Timothy Sr."), and her son, Timothy Klein II ("Timothy Jr."), each testified that Freed was not at their residence on March 17, 2010. Instead, each testified that Klein was at home that day when she received a phone call in the afternoon from Freed. Klein explained that Freed asked for a ride from the residence of Roscoe's sister, which, Freed said was

4

located on West Sixth Street. Klein testified that Freed was not outside when she arrived at what Freed purported to be the residence of Roscoe's sister, so she parked her maroon Dodge pickup truck along West Sixth Street and waited for Freed to arrive.

Klein testified that she waited in her truck for approximately 15 minutes before Freed arrived. Klein explained that Freed jumped in the back seat of her truck and got down on the floor. According to Klein, Freed indicated that she was lying on the floor because she had too much to drink. Klein testified that immediately after Freed climbed into her truck she heard sirens coming from behind her vehicle and that she observed several police vehicles driving down West Sixth Street towards her truck. As a result, Klein did not immediately drive off after Freed climbed into her truck, but waited for the police vehicles to pass. According to Klein, the police vehicles never passed her truck, but instead proceeded to turn off of West Sixth Street. Upon seeing this, Klein drove off down West Sixth Street.

Klein testified that Freed asked to go to a McDonald's east of Columbus, Ohio. Shortly after they left Marysville, Freed asked to stop so she could dump everything she just used to rob Dave's Pharmacy. According to Klein, this was the first time she learned of the robbery. Before they pulled over, Klein witnessed Freed dump the pills into a plastic bag. Then, Klein pulled over at a gas station off State Route 33, just south of Marysville, where she witnessed Freed discard several pill bottles, some clothing, and an airsoft gun into a dumpster. Thereafter, Klein drove Freed to her requested destination, where Roscoe had been waiting.

When Klein was asked why she did not report Freed to authorities, the following exchange occurred:

> Q: After Miss Freed told you what she had done, why didn't you just kick her out of your car?
>
> A: Because [State Route] 33 is a lonely place. And she's got two—well, at the time, [a] two and a half year old son * * *.
>
> Q: Speak up a little bit.
>
> A: I didn't want to see her go to jail and my—her son get left without a mother.
>
> * * *

5

>Q: Why didn't you call the police?
>
>A: [Bec]ause she's my niece.
>
>Q: Didn't want to see her get in trouble?
>
>A: No.

Trial Tr., Vol. II, p. 67–8.

In addition to Klein's testimony about the events surrounding the robbery, she and her husband also testified about their airsoft guns. Timothy Sr. testified that they owned several airsoft guns at the time the robbery occurred, and that the airsoft guns look nearly identical to a real gun. Klein testified that she initially assumed Freed took one of the airsoft guns from her residence, but indicated that none of their airsoft guns were missing.

After deliberations, the jury found Klein guilty of all five counts and their attendant specifications.

The matter proceeded to sentencing in February 2012. During sentencing the trial court determined, based on the parties' agreement, that Counts One, Two, and Three were allied offenses of similar import and merged Counts Two and Three into Count One per the State's request. The trial court then proceeded to sentence Klein to an eight-year prison term on Count One, a mandatory three-year prison term on the firearm specification, a mandatory five-year prison term on Count Four, and a 24–month prison term on Count Five. The trial court further ordered each prison term to be served consecutively to one another for an aggregate prison term of 18 years. In addition, the trial court ordered Klein to pay Dave's Pharmacy $480.00 in restitution, as well as all court costs, costs of prosecution, and a mandatory fine of $7,500.00.FN2

>FN2. Despite the jury's determination that the truck was used in the commission of all five offenses, the State elected not to pursue forfeiture and the trial court did not order the truck to be forfeited.

It is from this judgment Klein filed this timely appeal, presenting the following assignments of error for our review.

6

> Assignment of Error No. I
>
> DEFENDANT–APPELLANT RECEIVED PREJUDICIALLY INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HER SIXTH AND FOURTEENTH AMENDMENT RIGHTS, AS WELL AS HER RIGHTS UNDER SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION.
>
> Assignment of Error No. II
>
> THE JURY'S VERDICTS ON COUNTS ONE THROUGH FOUR ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND MUST BE REVERSED.
>
> Assignment of Error No. III
>
> APPELLEE COMMITED (sic) PROSECUTORIAL MISCONDUCT IN ITS CLOSING ARGUMENTS WHEN IT ARGUED ABOUT PERSONAL KNOWLEDGE AND NOT THE FACTS OF THIS CASE.
>
> Assignment of Error No. IV
>
> THE TRAIL (sic) COURT ERRED IN NOT GRANTING APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL AT THE END OF THE STATE'S CASE BECAUSE THE CONVICTIONS WERE BASED ON THE UNRELIABLE, UNCORROBORATED TESTIMONY OF THE ACCOMPLICE WITH NO INDEPENDENT EVIDENCE.
>
> Assignment of Error No. V
>
> THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO CONSECUTIVE SENTENCES.

*State v. Klein,* No. 14-12-09, 2013 WL 2639118, at *1-5 (Ohio App. 3rd Dist. June 10, 2013). On June 10, 2013, the appellate court affirmed the judgment of the trial court. *Id*. Petitioner did not file a timely appeal to the Ohio Supreme Court. On August 14, 2013, she filed a motion for leave to file a delayed appeal in the Ohio Supreme Court. ECF 6-1, PageID# 362. On October 23, 2013, the Ohio Supreme Court denied Petitioner's motion for delayed appeal. *State v. Klein*, 137 Ohio St.3d 1456 (Ohio 2013). On December 24, 2013, the Ohio Supreme Court denied

Petitioner's motion for reconsideration. *State v. Klein*, 137 Ohio St.3d 1445 (Ohio 2013). On June 9, 2014, the United States Supreme Court denied Petitioner's petition for a writ of *certiorari. Klein v. Ohio,* 134 S.Ct. 2735 (2014).

On July 18, 2013, Petitioner filed a petition for post conviction relief. She asserted that she had been denied the effective assistance of counsel because her attorney failed to subpoena defense witnesses Roscoe Vansickle, and Licking County Detectives Greg Collins and Jay Cook. She also complained that her attorney failed to obtain her financial records to prove that she had no motive for the robbery. ECF No. 6-1, PageID# 428. The record does not reflect that the trial court has ruled on the petition for post conviction relief.

On September 27, 2013, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). On November 13, 2013, the appellate court denied that application as untimely. Petitioner apparently did not file an appeal from that decision.

On March 6, 2015, Petitioner filed this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. She alleges that she was denied the effective assistance of trial counsel, that she was denied the effective assistance of appellate counsel, and that the trial court abused its discretion in imposing sentence. Respondent contends that Petitioner's claims are procedurally defaulted or offer no basis for relief.

**Procedural Default**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If she fails to do so, but still has an avenue open to her by which she may present the claims, her

petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam); Picard v. Connor*, 404 U.S. 270, 275–76 (1971). If she can no longer present her claims to a state court, she has waived them for federal habeas review unless she can demonstrate cause for the procedural default and actual prejudice from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 397 (1986*); Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a court considers the following to determine whether a federal habeas claim is precluded due to the petitioner's failure to observe a state procedural rule: "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Second, the court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, the court must determine whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the court determines that the petitioner failed to comply with an adequate and independent state procedural rule, the petitioner must demonstrate cause for her failure to follow the State's procedural rule as well as actual prejudice from the alleged constitutional error. *Id*.

In claim one, Petitioner alleges that she was denied the effective assistance of trial counsel because her attorney failed to subpoena defense witnesses, and failed to advise her that she could secure new representation. Specifically, she complains that her attorney failed to raise at trial an issue regarding the prior criminal records of Freed, of Freed's mother and of Roscoe Vansickle, that her trial counsel failed to subpoena Detectives Jay Cook and Greg Collins, who had previously dealt with Freed and Vansickle, that her trial counsel failed to properly cross-

examine Freed by impeaching her with her prior inconsistent statements to police and failed to object to the admission into evidence, on the ground that it contained evidence of prior bad acts, Petitioner's interview with police. Petitioner also complains that her trial attorney failed to cross examine police regarding the route taken to apprehend the perpetrator of the crime, and failed to subpoena Petitioner's bank records, unemployment records and other financial records in order to establish that she had no motive for the robbery. Finally, Petitioner complains that her trial counsel failed to properly cross-examine prosecution witness Karen Smith and failed to object to the firearm specification as improper.

Of all these claims, Petitioner asserted on direct appeal only the claim that her trial attorney improperly failed to object to the introduction of her videotaped interview with police.[1] She also asserted that the trial court had improperly imposed consecutive terms of incarceration, which she renews in claim three of the *Petition* filed in this Court. However, Petitioner thereafter failed to file a timely appeal to the Ohio Supreme Court and Petitioner may no longer do so under Ohio's doctrine of *res judicata*. *See State v. Cole,* 2 Ohio St.3d (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); State *v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). Moreover, the Ohio Supreme Court's denial of a delayed appeal constitutes a procedural ruling sufficient to bar review of a petitioner's federal constitutional claims. *Smith v. State of Ohio Dept. of Rehabilitation and Corrections*, 463 F.3d 426, 432 (6th Cir. 2006)(citing *Bonilla v. Hurley*, 370 Ohio St.3d 494, 497 (6th Cir. 2004)). The state courts were never given an opportunity to enforce the procedural rules at issue due to the nature of Petitioner's procedural defaults.

---

[1] Petitioner's appeal also alleged that her counsel was ineffective because he did not take reasonable measures to secure her or Freed's telephone records from the day of the robbery. *See State v. Klein*, 2013 WL 2639118, at *15.

10

Ohio's doctrine of *res judicata* in this context is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rules at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rules must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky,* 466 U.S. 341, 348-351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); s*ee also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

11

Petitioner may still obtain review of the merits of these claims if she establishes cause for her procedural defaults, as well as actual prejudice from the alleged constitutional violations.

> "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to h[er;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003). Petitioner has failed to meet this standard here.

The ineffective assistance of appellate counsel may serve as cause for a petitioner's procedural default if that claim is not, itself, procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). In claim two, Petitioner alleges that her appellate counsel was ineffective. However, the state appellate court denied Petitioner's Rule 26(B) application as untimely. Further, Petitioner thereafter failed to file an appeal to the Ohio Supreme Court. She may no longer do so, since Ohio does not permit delayed appeals in Rule 26(B) proceedings. Rule 7.01(A)(4)(c), Ohio Supreme Court Rules of Practice. Petitioner has therefore procedurally defaulted her claim of ineffective assistance of appellate counsel. It follows, then, that her claim of ineffective assistance of appellate counsel cannot serve to excuse Petitioner's procedural default of these other claims.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333.

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of

> nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup* [*v. Delo*], 513 U.S. [298,] 316, 115 S.Ct. 851, 130 L.Ed.2d 808 [(1995)]. Thus, the threshold inquiry is whether "new facts raise [ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter v. Jones*, 395 F.3d 577, 589 (6th Cir. 2005) (footnote omitted). The record fails to reflect these circumstances here.

As a final note, although Petitioner complained in her petition for post conviction relief that her attorney failed to subpoena her financial records and failed to call Roscoe Vansickle and the detectives as defense witnesses, ECF No. 6-1, PageID# 428, she offers no suggestion that any such evidence would have materially assisted the defense. Therefore, this claim plainly lacks merit.

**Recommended Disposition**

Therefore, the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss,* ECF No. 6, be **GRANTED** and that this action be **DISMISSED.**

13

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                        *s/ Norah McCann King*
                                        Norah McCann King
                                        United States Magistrate Judge

October 6, 2015